**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MARIA JOSEFINA PICHARDO SUAREZ,
*Plaintiff,*

v.

ANDREW M. SAUL, Commissioner of Social Security Administration,
*Defendant*.

No. 3:19-cv-00173 (JAM)

## ORDER REMANDING DECISION OF COMMISSIONER OF SOCIAL SECURITY

Plaintiff Maria Josefina Pichardo Suarez alleges that she is disabled and unable to work due to several conditions. She filed this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security denying her application for social security disability benefits and supplemental security income.[1] Her application was denied as a result of a hearing and decision by an administrative law judge ("ALJ") who the Commissioner concedes was not properly appointed as required under the Appointments Clause of the U.S. Constitution. Although Pichardo did not challenge the qualifications of the ALJ at the time that the ALJ presided over her case, I conclude that Pichardo was not required to do so in order to raise her constitutional claim of error before me now. Accordingly, I will grant Pichardo's motion to remand with instructions that Pichardo receive a new hearing before a different and properly appointed ALJ.

[1] Pursuant to Fed. R. Civ. P. 25(d), the Clerk of Court shall substitute the Commissioner of Social Security Andrew M. Saul as the defendant in place of Acting Commissioner Nancy A. Berryhill who was initially named as the defendant.

## BACKGROUND

Pichardo filed an application for disability insurance benefits under Title II on August 6, 2015, Doc. #13 at 424-25, and filed an application for supplemental security income under Title XVI on October 13, 2015, *id*. at 426-34. Her claims were initially denied on September 29, 2015, *id.* at 274, and upon reconsideration on April 1, 2016, *id.* at 291-92. Pichardo then timely filed a written demand for a hearing. *Id.* at 308-10. With the assistance of counsel, she appeared and testified before Administrative Law Judge (ALJ) Ronald J. Thomas on February 6, 2018. *Id.* at 250-68. On March 20, 2018, the ALJ issued a decision stating that Pichardo was not disabled within the meaning of the Social Security Act. *Id*. at 41-53. The Appeals Council affirmed on December 27, 2018. *Id*. at 5-8. Pichardo timely filed this action on February 5, 2019. Doc. #1.

About three months after the ALJ denied Pichardo's claims, the Supreme Court issued a ruling on June 21, 2018, in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), holding that ALJs for the U.S. Securities and Exchange Commission were not ordinary federal government employees but had high responsibilities that qualified them as "Officers of the United States" within the meaning of the Constitution's Appointments Clause, U.S. Const. art. II, § 2, cl. 2. *Id.* at 2051-55. As a result, such "Officers of the United States" were required to be appointed by the President, a court of law, or a head of a department. *Ibid.* Because the ALJs from the SEC were not properly appointed, the Supreme Court held that the petitioner in *Lucia* was entitled to a new hearing before a different, constitutionally appointed ALJ. *Id.* at 2055.

The federal government quickly realized that *Lucia*'s reasoning likely applied to ALJs within other federal agencies such as the Social Security Administration. On July 13, 2018, the President issued an executive order concluding that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause."

Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018). Three days later, on July 16, 2018, the Acting Commissioner of Social Security formally appointed the agency's ALJs in order to comply with the Appointments Clause. *See* Social Security Ruling 19-1p; Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council, 84 Fed. Reg. 9582, 9583 (March 15, 2019). The Commissioner's briefing concedes for purposes of this case that the Social Security Administration's ALJs are indeed "Officers of the United States" who must be appointed in accordance with the Appointments Clause. Doc. #15-1 at 17 n.4.

Pichardo now argues in light of *Lucia* that I should remand this action for a rehearing before a new and properly appointed ALJ. In response, the Commissioner argues that Pichardo failed to exhaust this issue before the ALJ.

**DISCUSSION**

"The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Because it is Congress—not administrative agencies—that control the jurisdiction of the federal courts, congressional intent is of "paramount importance" to deciding whether an issue must be exhausted before an administrative agency before it may be litigated in court. *Ibid.*

Sometimes Congress expressly mandates that a plaintiff exhaust a claim before an administrative agency, in which case exhaustion is required before a federal court may entertain the claim. *Ibid.* On the other hand, "where Congress has not clearly required exhaustion, sound judicial discretion governs." *Ibid.*

To guide the exercise of sound judicial discretion, the Supreme Court has elaborated on the reasons why a plaintiff may be required to exhaust an issue before an administrative agency before raising the issue in a federal court. The first reason is *administrative expertise*: "that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.* at 145. Thus, "[e]xhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Ibid.*

A second reason is *judicial economy*: "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided." *Ibid.* Moreover, "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context." *Ibid.*[2]

As an initial matter, it is undisputed that Congress has not mandated exhaustion in this case. Congress has not expressly required that a disability applicant who wishes to challenge the authority of an ALJ under the Appointments Clause must do so in the first instance during the course of proceedings before the ALJ. In the absence of such an express issue exhaustion requirement, the only question remaining is whether sound judicial discretion weighs in favor of imposing an exhaustion requirement.

The Third Circuit has recently and persuasively explained why a claimant should not be required to exhaust an Appointments Clause challenge before an ALJ. *See Cirko v. Comm'r of*

[2] Of course, it could be overbroadly claimed that judicial economy is promoted by invariably imposing an exhaustion requirement, because courts are thereby spared from ever having to address an issue that a party failed to raise in the first instance before an administrative agency. But the relevant judicial economy inquiry is whether a court's burden is eased by having the agency address the issue such that the issue may be resolved without need for court intervention or such that the issue may be clarified by a reasoned decision of the agency for the court to review.

*Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). The Third Circuit's ruling explained at the outset that "[t]o determine whether to impose an exhaustion requirement where we have not done so before, we must assess (a) the 'nature of the claim presented,' (b) the 'characteristics of the particular administrative procedure provided,' and (c) the proper 'balance [between] the interest of the individual in retaining prompt access to a federal judicial forum [and] countervailing institutional interests favoring exhaustion.'" *Id.* at 153 (quoting *McCarthy*, 503 U.S. at 146).

As to the first of these factors (the "nature of the claim presented"), the Third Circuit described the importance of the Appointments Clause to promoting neutrality of decisionmaking, to preserving the separation of powers, and to guaranteeing individual liberty against governance by those who are not politically accountable to the electorate. *Id.* at 153-54. The Third Circuit reasoned that "exhaustion is generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers." *Id.* at 153.

This context of a structural constitutional challenge stands in contrast to situations where a party should be required to exhaust an issue before the agency in order to allow the agency to bring to bear its technical expertise. *See, e.g., Washington v. Barr*, 925 F.3d 109, 117 (2d Cir. 2019) (requiring administrative exhaustion of claim challenging classification of marijuana as a Schedule I substance under the Controlled Substances Act, in part because "[a]t its root, the question raised by Plaintiffs' suit is whether developments in medical research and government practice should lead to the reclassification of marijuana").

As to the second factor (the "characteristics of the particular administrative procedure provided"), the Third Circuit noted how Social Security disability hearings are essentially non-adversarial proceedings. *See Cirko*, 948 F.3d at 155. Indeed, as the Supreme Court itself has

observed, if "an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker." *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Thus, in *Sims*, the Supreme Court declined to require a Social Security claimant to exhaust claims before the Appeals Council, with a plurality noting that "Social Security proceedings are inquisitorial rather than adversarial," and that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, and the Council's review is similarly broad." *Id.* at 110-11 (plurality opinion). Although the Supreme Court in *Sims* had no occasion to decide whether its ruling should extend to exhaustion of issues before an ALJ as well as before the Appeals Council, it would be anomalous to conclude that a claimant must exhaust all issues before the ALJ despite not having to do so before the Appeals Council.

As to the third factor (the "balance between the interest of the individual in retaining prompt access to a federal judicial forum and countervailing institutional interests favoring exhaustion"), the Third Circuit in *Cirko* noted how the interests of the individual are strong and that, in light of the non-adversarial nature of ALJ proceedings, an exhaustion requirement would "forc[e] claimants—despite the informal, non-adversarial nature of the review process—to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture." *Id.* at 157.[3] By contrast, the governmental interest is "negligible at best," because an Appointments Clause challenge has nothing to do with an agency's expertise and because, even if the issue had been raised before the ALJ, the ALJ could not possibly have granted relief by

[3] The Third Circuit's decision goes on to discuss how the individual's interests are even more imperiled if the claimant is not represented by counsel. Here, by contrast, Pichardo was represented by counsel before the ALJ, but I do not understand the Third Circuit's decision to suggest that its result would be different for cases of represented claimants. Moreover, despite the presence of counsel for Pichardo, it is hard to fault counsel for failing to raise the Appointments Clause challenge in view that the proceedings before the ALJ took place months before the Supreme Court's decision in *Lucia*.

transferring the matter to another ALJ in view that *all* the agency's ALJs were subject to the same grounds of invalidity under the Appointments Clause. *Id.* at 157-58.

This underscores yet another consideration identified by the Supreme Court in *McCarthy v. Madigan*: whether exhaustion would be futile. "[A]n administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief," such as when "an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." 503 U.S. at 147-48 (internal quotations and citation omitted). Thus, as the Second Circuit has noted, "[e]xhaustion is not required, however, when an agency lacks the power to grant effective relief, including when the agency would be called upon to resolve a substantial constitutional issue." *Santos-Buch v. Fin. Indus. Regulatory Auth., Inc.*, 591 F. App'x 32, 33 (2d Cir. 2015).

That is true here. The Commissioner does not argue that if Pichardo had raised an Appointments Clause challenge before the ALJ that the ALJ would have had any power to grant relief. Under these circumstances, it would be pointless and senseless to require Pichardo to have exhausted her Appointments Clause challenge before the ALJ.

It does not appear to date that any federal appeals court other than the Third Circuit has decided whether a claimant must exhaust an Appointments Clause challenge before the ALJ. But, as the Commissioner notes, a large number of district courts have ruled that exhaustion is required. Doc. #15-1 at 21-23 (citing cases); *see also Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 351 (S.D.N.Y. 2019) (collecting cases). I respectfully disagree with these contrary decisions for the reasons well-stated by the Third Circuit in *Cirko* and also by other recent district court rulings. *See, e.g.*, *Erick M., o.b.o. D.A.W. v. Saul*, 2020 WL 819397, at *6-*7 (N.D.

Okla. 2020); *McCray v. Soc. Sec. Admin*., 2020 WL 429232, at *11-*16 (D.N.M. 2020); *Probst v. Berryhill*, 377 F. Supp. 3d 578, 582-87 (E.D.N.C. 2019).

The Commissioner cites several regulations that govern what issues a claimant should raise before the ALJ. So, for example, claimants "should include in [their] request" for a hearing before an ALJ "[t]he reasons they disagree with the previous determination or decision." 20 C.F.R. §§ 404.933(a)(2), 416.1433(a)(2). At least 75 days before the hearing, the agency sends applicants a notice of "[t]he specific issues to be decided." *Id.* §§ 404.938, 416.1438. If applicants object to the issues to be decided, they "must notify the administrative law judge in writing at the earliest possible opportunity" and "state the reason(s) for [their] objection(s)." *Id.* §§ 404.939, 416.1439. Similarly, if applicants object to the ALJ who will conduct the hearing, they "must notify the [ALJ] at [their] earliest opportunity." *Id.* §§ 404.940, 416.1446. ALJs "may" consider at the hearing "a new issue" raised *sua sponte* or by "any party" after the ALJ receives the hearing request but before notice of the hearing decision is mailed. *Id.* §§ 404.946(b), 416.1446(b). Applicants "may" pursue an expedited appeal to a federal district court if *inter alia* they claim, and the agency agrees, "that the only factor preventing a favorable determination or decision is a provision in the law that [the applicants] believe is unconstitutional." *Id.* §§ 404.924, 416.1424.

The Commissioner cites these regulations for the proposition that the Social Security Act's plain language required exhaustion of Pichardo's Appointment Clause claim. I do not agree. There is no express requirement that applicants raise a constitutional issue during the administrative proceedings in order to preserve it for judicial review. It is one thing for a regulation to encourage applicants to notify the ALJ of all their issues to allow for their fair and efficient adjudication; it is something else entirely to declare that the failure to do so will forfeit

those issues for purposes of federal court adjudication. "[W]hile several district courts have concluded that the SSA's regulations governing ALJ hearings require issue exhaustion, the regulations imply no such thing." *McCray*, 2020 WL 429232, at *16. "The [Social Security] statute still does not require issue exhaustion," and "[i]n the 20 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion." *Erick M.*, 2020 WL 819397, at *7; *see also Sims*, 530 U.S. at 108 (stating that "[a]lthough the question is not before us, we think it likely that the Commissioner could adopt a regulation that did require issue exhaustion").

Finally, the Commissioner complains that the Social Security Administration will be flooded with "thousands of previously decided claims where the claimant failed to raise any challenge to the ALJ's appointment." Doc. #15-1 at 26. But, as the Third Circuit observed in *Cirko*, there is good reason to doubt this claim. The effect of not requiring exhaustion would be limited only to those actions already in the pipeline, that were decided during a very particular time frame, and where the claimant has sought federal court review and actually raised the Appointments Clause challenge in federal court. "But we deal in facts, not hyperbole, and, on inspection, the purported flood is actually a trickle." *Cirko*, 948 F.3d at 159.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to remand the decision of the Commissioner (Doc. #14), and the matter is remanded for a new hearing before a constitutionally appointed ALJ other than the ALJ who presided over Pichardo's first hearing. The Court DENIES the motion to affirm the decision of the Commissioner (Doc. #15). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 26th day of February 2020.

/s/ ***Jeffrey Alker Meyer***____________
Jeffrey Alker Meyer
United States District Judge